AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California



| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. |
| One CX1 GPS Tracking Device Black and Silver in Color IMEI: 353701093228183 | ) ) | |

'19 MJ 3011

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841, 846, 952, 960, & 963 | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit of HSI Special Agent Konrad Daniels

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Konrad Daniels, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/19

*Judge's signature*

City and state:  San Diego, California

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF:          Case Number:

| | |
|---|---|
| **One CX1 GPS Tracking Device** | ) AFFIDAVIT OF SPECIAL |
| **Model Number: GT06N** | ) AGENT KONRAD DANIELS |
| **IMEI: 353701093228183** | ) IN SUPPORT OF SEARCH |
| | ) WARRANT |
| | ) |
|             | ) |

## AFFIDAVIT

I, Konrad Daniels, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations for one CX1 GPS Tracking Device, Model Number: GT06N, IMEI: 353701093228183 ("**Subject Device**"), as described in Attachment A, to seize records and data from and including **October 1, 2018 to April 12, 2019** that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code, Sections 841, 846, 952, 960, and 963, as described in Attachment B.

2.     Customs and Border Protection Officers ("CBPOs") seized the **Subject Device** on April 12, 2019, from MARCO APOLO ARAMBURO-QUEVEDO ("ARAMBURO-QUEVEDO") at the Otay Mesa, California Port of

Entry. On that day, ARAMBURO-QUEVEDO was the driver and sole occupant of gray 1999 Nissan Frontier pickup truck. Upon inspection of the vehicle, CBPOs discovered 20 packages of cocaine, totaling approximately 24.84 kilograms (54.76 pounds), concealed in the dashboard of the vehicle. Also concealed within the vehicle, wired into the vehicle's electrical system, was a GPS tracker and microphone. I believe it is likely that co-conspirators used the **Subject Device** to locate and track the vehicle ARAMBURO-QUEVEDO was driving during the smuggling event.

3.     ARAMBURO-QUEVEDO has been charged with importation of a controlled substance (cocaine) in the Southern District of California (19cr1970-JM). For the reasons discussed below, I respectfully submit that probable cause exists to believe that **Subject Device** likely contains evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The **Subject Device** is currently in HSI possession at 880 Front Street, San Diego, CA 92101.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been employed as a special agent since July 2009 and am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7). Previously, I was employed as a United States Border Patrol Agent in the San Diego Sector from March 2003 to July 2009. I am currently assigned to the HSI RAC Oceanside, California. I graduated from the Federal Law Enforcement Training Center where I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have had

training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities. I have also worked with other agents with extensive experience in narcotics smuggling investigations. I also have experience in obtaining and executing arrest and search warrants.

5.    I have arrested or participated in the arrest of numerous persons for violating federal drug laws. In these cases, I have conducted interviews with the arrested persons and their associates, as well as with cooperating individuals and informants. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States, and while operating inside the United States. My professional experience working along the Southwest border and the training I have received as a Special Agent and Border Patrol Agent have familiarized me with the enforcement of law relating to Immigration and Customs violations, including narcotics smuggling, the transportation of narcotics, and the laundering and movement of narcotics proceeds.

6.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during participation in this investigation; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of

3

establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. All dates, times, and amounts discussed herein are approximate.

## STATEMENT OF PROBABLE CAUSE

7.     On April 12, 2019, at approximately 12:33 p.m., ARAMBURO-QUEVEDO applied for admission into the United States from Mexico at the Otay Mesa, California Port of Entry. As mentioned above, ARAMBURO-QUEVEDO was the driver and sole occupant of a gray 1999 Nissan Frontier pickup truck bearing a Mexico license plate, number AG9561A ("the vehicle"). A CBPO conducting pre-primary roving inspections approached the vehicle. When asked the purpose of his trip to the United States, ARAMBURO-QUEVEDO stated he was going to buy auto parts and had nothing to declare. The CBPO observed ARAMBURO-QUEVEDO avoided eye contact and that his hands were shaking. The CBPO inspected the dashboard of the vehicle and noticed what appeared to be tampering. A Human and Narcotics Detector Dog then screened the vehicle and alerted to the dashboard area. ARAMBURO-QUEVEDO and the vehicle were then sent to secondary inspection for further inspection.

8.     In secondary inspection, CBPOs ran the vehicle through the Z-portal, which showed anomalies in the dashboard area. CBPOs searched the vehicle and found 20 packages in the dashboard area of the vehicle. A randomly selected package was field-tested, and it tested positive for cocaine. The packages collectively weighed approximately 24.84 kilograms (54.76 pounds). ARAMBURO-QUEVEDO was arrested and charged with violating 21 U.S.C. § 952 & 960, Importation of Controlled Substances.

4

9.      While conducting a search of the vehicle, CBPOs also seized the **Subject Device** from the vehicle's electrical wiring system.

10.      Post-arrest, ARAMBURO-QUEVEDO acknowledged his rights and agreed to speak with law enforcement. He stated that he had driven the truck containing drugs approximately twice a week for the past six months, since November 2018. ARAMBURO-QUEVEDO said he responded to an ad in the newspaper, and was told that he would cross a vehicle to buy toys and automotive parts in the United States. The person he communicated with was a supervising mechanic, "Pascual." Pascual had ARAMBURO-QUEVEDO fill out a job application with all of his identifying information, and loaned him his "boss's" truck. ARAMBURO-QUEVEDO was given $150 to cross into the United States to purchase either toys or automotive parts; if there was a day when they did not need anything purchased, ARAMBURO-QUEVEDO would still be paid $70 to cross. ARAMBURO-QUEVEDO also stated there were times he left the vehicle in the United States and would walk back across the border to Tijuana. ARAMBURO-QUEVEDO's border crossing history indicates that he crossed 88 times into the United States from October 4, 2018 until the date of his arrest, April 12, 2019. Notably, beginning on October 4, 2018, ARAMBURO-QUEVEDO's crossings coordinate with the load vehicle's crossings on 34 separate occasions.

11.      Based on my experience, training, and consultation with other officers, I believe that ARAMBURO-QUEVEDO, and other unidentified co-conspirators, were involved in a conspiracy to import cocaine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States.    Based on my investigation of drug importation and distribution conspiracies, contact with smugglers can begin weeks or months before drugs are

loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). ARAMBURO-QUEVEDO's border crossing history is consistent with burning plates.

12.    In this case, the presence of a tracker hidden inside the dashboard of the pickup truck driven by ARAMBURO-QUEVEDO  from Mexico into the United States, coupled with the concealment of approximately 24.84 kilograms of cocaine inside the same car, is evidence that the user(s) of the tracker knew drugs were being smuggled from Mexico into the United States and used the tracker in furtherance of those illicit activities. The electronic contents of the tracker will therefore likely contain evidence of and pertaining to illegal drug trafficking activities. This evidence may include location information relating to where the drugs were loaded, as well as the route those drugs took to the U.S. border. There may also be identifying information relating to the subscriber(s) and user(s) of the tracking device, who likely know or are the same people who placed the drugs inside the Nissan pickup truck.

13.    Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware of the following:

a.    Drug smugglers will install a GPS tracking device in vehicles being used to transport large, and valuable, amounts of illegal cargo.

b.    Drug smugglers will use GPS tracking devices to target and actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.    Drug smugglers and their accomplices will use GPS tracking devices because they can easily determine what time their illegal cargo will arrive

at predetermined locations.

      d.    Drug smugglers will use GPS devices to ensure that drivers respond to the exact drop off and/or pick up time of their illegal cargo.

     14.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS tracking device. Specifically, I know based on my training, education, consultation with others, and experience investigating these conspiracies that searches of GPS tracking devices yields evidence:

      a.    tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of cocaine or some other controlled substance from Mexico into the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling cocaine or some other controlled substance from Mexico into the United States;

      d.    tending to identify travel to or presence at locations involved in the smuggling of cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

      e.    tending to identify the user of, or persons with control over or access to, the GPS device; and/or

7

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

15.    Based on the facts and opinions set forth in this affidavit, I submit that there is probable cause to believe that information relevant to narcotics smuggling activities, such as location coordinates, travel routes, and subscriber information, will be found in the **Subject Device**.

## SEARCH METHODOLOGY

16.    It is not possible to determine, merely by knowing the GPS tracking device make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.   GPS tracking devices today can be simple cellular receiving devices. An increasing number of GPS devices now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on that device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.   Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.   Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.   For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results

8

using digital photography.  This process is time and labor intensive and may take weeks or longer.

17.     Following the issuance of this warrant, I will collect the **Subject Device** and subject it to analysis.  All forensic analysis of the data contained within the device and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant, as set forth in Attachment B.

19.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take several weeks. In this case, the trial is set for August 12, 2019. To ensure that the **Subject Device**'s contents are reviewed and produced in discovery in a timely fashion, the personnel conducting the identification and extraction of data will complete the analysis by **August 8, 2019**, absent further application to this court.

## CONCLUSION

20.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein).  Therefore, I respectfully request that the Court issue a warrant authorizing me or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

9

I swear the foregoing is true and correct to the best of my knowledge and belief.

Konrad Daniels
Special Agent, HSI

Subscribed and sworn to before me this 18th day of July, 2019.

Hon. Karen S. Crawford
United States Magistrate Judge

10

## ATTACHMENT A
### PROPERTY TO BE SEARCHED

The following property is to be searched (**Subject Device**) in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, is described below:



One CX1 GPS Tracking Device
Black and silver in color
Model Number: GT06N
IMEI: 353701093228183

**Subject Device** is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the GPS tracking device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular-enabled for evidence described below. The seizure and search of the GPS tracking device will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS tracking device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2018 to April 12, 2019:

      a.    tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

      d.    tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

      e.    tending to identify the user of, or persons with control over or access to, the **Subject Device**; and/or

      f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, 841, 846, 952, 960, and 963.